In the Matter of WILMER HILL GRIER, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 10, 1990

### APPEARANCES OF COUNSEL

*Charles M. Guria* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Wilmer Hill Grier,* respondent *pro se.*

**OPINION OF THE COURT**

Per Curiam.

Respondent, Wilmer Hill Grier was admitted to the practice of law by the First Judicial Department on October 10, 1972. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee (DDC) has moved for an order confirming the report of a duly constituted Hearing Panel of the DDC and disbarring respondent. Respondent has been suspended from the practice of law by this court on January 12, 1989. (144 AD2d 24.) The basis upon which respondent was suspended was her conviction of a "serious crime" within the meaning of Judiciary Law § 90 (4) (d).

The "serious crime" involved a personal transaction, for which respondent wrote, and had certified, a check for $99.10 on the account of Almer-Hill, Inc., a corporation owned by her. She then altered the check so that it would read $99,107.22, the amount which she believed she had to pay the following day to complete the purchase of her apartment. She tendered the altered check, receiving in return a stock certificate reflecting her ownership of the apartment. When the check, drawn on an account which had a balance of approximately $100, bounced, the owner of the apartment filed a complaint with the New York County District Attorney.

Although respondent was charged with felony counts of forgery in the second degree and criminal possession of a forged instrument in the second degree, both class D felonies, she ultimately pleaded guilty to forgery in the third degree, a class A misdemeanor. While she characterized her criminal conduct as "the act of a silly desperate woman", she unequivocally stated "that I am not sorry". Respondent further asserted that she was justified because she had no intent to defraud the owner or transfer the stock certificate to a third party and was only seeking additional time to find another apartment. Following respondent's suspension, on April 18, 1989, she moved for a hearing so as to explain what she contended were "mitigating circumstances" surrounding the ill-fated transaction. On June 22, 1989, at a Hearing Panel of the DDC, which was for the express purpose of permitting respondent to testify as to these mitigating circumstances, she exhibited what appears to us to be a total lack of contrition,

and reaffirmed her statements that her conduct was justified, adding that she had been undeservedly exploited by the owner of the apartment.

Moreover, on April 22, 1989 only four days after respondent moved for the hearing, she violated our order suspending her from the practice of law, by appearing at an arraignment on behalf of a client, who paid her a $400 fee, in New York County Criminal Court. On May 24, 1989, respondent voluntarily appeared for a deposition held by the DDC to determine her compliance with our suspension order. Under oath, she gave false testimony to the effect that she had not made any court appearances since her suspension. It was only when she was confronted with the date, defendant's name, and specific court part that she admitted appearing in contravention of the suspension. She then attempted to justify the appearance, stating that "at that time I didn't have money to buy some food and stuff. I thought I was being dragged on and dragged on [by the DDC], so I took the case."

The Hearing Panel issued a written report. While the Hearing Panel noted that standing alone, the forgery conviction "would probably only warrant a suspension from the practice of law," respondent, by practicing during the period of suspension, "undercut the very foundation of our judicial system". Thus, while the Hearing Panel "believe[d] that respondent was truly sorry for her misconduct," it found that "respondent's explanation for her act of forgery is not sufficient to mitigate her commission of that crime and her subsequent misconduct." Accordingly, the Hearing Panel recommended disbarment.

By notice of motion dated November 30, 1989, the DDC seeks an order confirming the report and imposing the recommended sanction. Respondent, in a letter dated December 15, 1989, stated that "my crime is the fact that I am outspoken, Black and oppressed." She went on to declare, regarding the forgery, "I am still suffering from my acts, but it is worth it to me." Thus, she has again exhibited a total lack of remorse, or an appreciation of the wrongfulness of her conduct. While we are mindful that the forgery arose from a personal matter and did not involve a client, and was the first blemish on her record, we are dismayed by her defiant and unrepentant attitude. Respondent's further conduct of subsequently appearing in court while under a suspension order, and then lying under oath to the DDC when questioned about the matter,

warrants disbarment *(Matter of Jackson,* 149 AD2d 10 [1st Dept 1989]; *Matter of Brill,* 131 AD2d 3, 4-5 [1st Dept 1987]).

On the motion before us, and the uncontroverted evidence, including respondent's testimony and December 19, 1989 letter, we conclude that she has violated the terms of this court's January 12, 1989 suspension order by practicing law. We also agree with the Hearing Panel that respondent's testimony regarding the forgery does not serve to mitigate the circumstances of it.

Accordingly, respondent should be disbarred, and her name stricken from the roll of attorneys and counselors-at-law.

MURPHY, P. J., CARRO, MILONAS, ROSENBERGER and WALLACH, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, and her name is stricken from the roll of attorneys and counselors-at-law in the State of New York, effective as of April 10, 1990.